UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| LIANGDONG CHEN,<br><br>                *Plaintiff,*<br><br>  -against-<br><br>EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and INNOVIS DATA SOLUTIONS, INC.,<br><br>                *Defendants.* | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

By and through the undersigned counsel, Plaintiff LiangDong Chen ("Plaintiff"), with knowledge as to his own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that the allegations recited herein have substantial evidentiary support, states as follows:

### Introduction

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), Plaintiff brings this action against Defendants Equifax Information Services LLC, ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Innovis Data Solutions, Inc. ("Innovis") (collectively the "CRA Defendants") to recover actual, statutory, and punitive damages. In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-shifting action.

2. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4); *McIvor v. Credit Control Servs.*, 773 F.3d 909, 915 (8th Cir. 2014).

3. Congress also has plainly stated that the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." § 1681(b).

4. As Plaintiff recounts below, each Defendant denied Plaintiff – a victim of identity theft – the protections afforded to all consumers by the FCRA.

### Plaintiff's Claims Against Defendants Pursuant to the Fair Credit Reporting Act

5. In or around September 2019, at least two accounts began inaccurately reporting on Plaintiff's credit reports. One account was held by American Express Company ("AMEX Account"[1]), and the second was held by HSBC Bank USA NA ("HSBC Account"[2]; collectively, these accounts as well as, upon information and belief, a third disputed Citi[3] account believed to be fraudulent are "Fraudulent Accounts" or "Inaccurate Accounts").

6. Plaintiff disputed the accuracy of the Fraudulent Accounts with the CRA Defendants. Each CRA Defendant failed to remove one or more of the Inaccurate Accounts from their respective credit files for Plaintiff.

---

[1] The AMEX Account was reporting alternatively with a partial account number of 349992* on one or more Equifax and Experian reports.

[2] The HSBC Account was reporting with a partial account number of 521531* on one or more Equifax, Experian, and Innovis reports.

[3] The Citi Account was reporting with a partial account number of 54241* on one or more Experian reports.

*Plaintiff's claims against the CRA Defendants*

7. Based on acts and omissions described more fully below in the Statement of Facts, the CRA Defendants are liable to Plaintiff for violations of one or more of the following provisions of the FCRA: §§ 1681c-2, 1681e(b), and 1681i.

   *Violations of FCRA § 1681c-2*

8. Upon information and belief, Experian violated § 1681c-2 by failing to block the reporting of the disputed Fraudulent Accounts and items of personal identifier information after receiving information from Plaintiff that required Experian to do so.

   *Violations of FCRA § 1681e(b)*

9. Upon information and belief, Equifax and Experian violated FCRA § 1681e(b) by preparing and publishing one or more consumer report(s) about Plaintiff to third-parties. Those consumer reports, upon information and belief, contained inaccurate information about Plaintiff, including but not necessarily limited to inaccurate Fraudulent Accounts.

10. Upon information and belief, Equifax and Experian prepared and published one or more inaccurate consumer reports about Plaintiff because Equifax and Experian failed to follow reasonable procedures to assure maximum possible accuracy of information it reported about Plaintiff.

    *Violations of FCRA § 1681i*

11. Equifax, Experian, and Innovis each violated FCRA § 1681i(a)(1) by failing to (i) conduct reasonable reinvestigations of one or more of the Fraudulent Accounts after Plaintiff disputed

their accuracy to determine whether they were accurately reporting, and (ii) record the correct status of the disputed Fraudulent Accounts.

12. Equifax, Experian, and Innovis each violated FCRA § 1681i(a)(4) by failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes of the Fraudulent Accounts.

13. Equifax, Experian, and Innovis each violated FCRA § 1681i(a)(5) by failing to promptly delete one or more disputed Fraudulent Accounts from their respective credit files for Plaintiff even though Equifax, Experian, and Innovis, had they conducted reasonable reinvestigations of Plaintiff's disputes, could not have affirmatively verified that the disputed information was accurate.

14. Upon information and belief, Equifax and Experian also failed to clearly note as disputed at least some information that Plaintiff had disputed in one or more consumer reports that Equifax and Experian published after concluding their respective reinvestigations of Plaintiff's disputes in violation of § 1681i(c).

15. As a direct and proximate result of Defendants' violations of the FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

## Jurisdiction and Venue

16. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p).

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## The Parties

18. Plaintiff LiangDong Chen is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)). A substantial part of the events and/or omissions giving rise to this cause of action happened in the Western District of Arkansas.

19. Defendant Equifax Information Services LLC is a Georgia limited liability company and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

20. Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

21. Defendant Innovis Data Solutions, Inc. is an Ohio corporation and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)).

## Statement of Facts

*Equifax Disputes*

22. Plaintiff made multiple disputes to Equifax of one or more of the Fraudulent Accounts including those disputes set forth below.

23. Upon information and belief, Plaintiff disputed responsibility for one or more of the Fraudulent Accounts to Equifax at least once prior to April 2020.

24. After Plaintiff's disputes, Equifax continued to report the disputed Fraudulent Accounts even though, had it performed a reasonable reinvestigation, it could not have verified the accuracy of the disputed information. Equifax informed Plaintiff that it would continue reporting the Fraudulent Accounts in dispute results dated April 6, 2020.

25. In a letter dated April 1, 2020, Plaintiff disputed responsibility for the HSBC Account to Equifax ("April Equifax Dispute").

26. After Plaintiff's dispute, Equifax continued to report the HSBC Account even though, had it performed a reasonable reinvestigation, it could not have verified the accuracy of the disputed information. Equifax informed Plaintiff of its conclusion in dispute results dated May 17, 2020.

27. In a letter dated July 10, 2020, Plaintiff disputed responsibility for the HSBC Account to Equifax ("July Equifax Dispute").

28. The July Equifax Dispute included Plaintiff's name, address, social security number, phone number, date of birth, and, upon information and belief, supporting documents such as Plaintiff's driver's license, passport, social security card, and two documents showing his name and address to verify his identity.  The dispute letters each also included as an exhibit a Federal Trade Commission Identity Theft Report that described the inaccurate HSBC Account. The July Equifax Dispute also informed Equifax that the HSBC Account was not accurately attributable to Plaintiff, was believed to be the product of identity theft, and that the HSBC Account was not related to any transaction by Plaintiff.

29. Despite Plaintiff's submission of the foregoing documents and information, upon information and belief, Equifax failed to temporarily block the HSBC Account from Plaintiff's credit file.

*Experian Disputes*

30. Plaintiff made multiple disputes to Experian of one or more of the Fraudulent Accounts including those disputes set forth below.

31. Upon information and belief, Plaintiff disputed responsibility for one or more Fraudulent Accounts to Experian at least three times prior to April 2020.

32. After Plaintiff's disputes, Experian continued to report the disputed Fraudulent Accounts even though, had it performed reasonable reinvestigations, it could not have verified the accuracy of the disputed information. Experian informed Plaintiff that it would continue reporting the Amex and Citi Accounts in dispute results dated November 28, 2019. Experian separately informed Plaintiff that it would continue to report the HSBC Account in dispute results dated February 24, 2020. Experian also informed Plaintiff that it would continue to report the AMEX Account in dispute results dated March 27, 2020.

33. Moreover, Experian failed to clearly indicate that the HSBC Account was disputed in a March 30, 2020 credit report following at least one of Plaintiff's disputes.

34. In a letter dated April 1, 2020, Plaintiff disputed responsibility for the Fraudulent Accounts to Experian ("April Experian Dispute").

35. After Plaintiff's April Experian Dispute, Experian continued to report the disputed Fraudulent Accounts even though, had it performed reasonable reinvestigations, it could not have verified the accuracy of the disputed information. Experian informed Plaintiff of its conclusion in dispute results dated May 13, 2020.

36. Upon information and belief, Plaintiff disputed responsibility for the AMEX and HSBC Accounts to Experian in or around May 2020. ("May Experian Dispute").

37. After Plaintiff's May Experian Dispute, Experian continued to report the disputed AMEX, Citi, and HSBC Accounts even though, had it performed a reasonable reinvestigation, it could not have verified the accuracy of the disputed information. Experian informed Plaintiff of its conclusion in dispute results dated June 24, 2020.

38. Moreover, Experian failed to clearly indicate that the HSBC Account was disputed in a June 28, 2020 credit report following Plaintiff's disputes. That report – with all three Fraudulent accounts displaying – showed a devasting "overall credit usage" of 246%.

39. In a letter dated July 10, 2020, Plaintiff disputed responsibility for the Fraudulent Accounts, as well as the accuracy of an address to Experian ("July Experian Dispute"). This dispute described the continued inaccurate reporting as a "nightmare" and a "disaster."

40. The July Experian Dispute included Plaintiff's name, address, social security number, phone number, date of birth, and, upon information and belief, supporting documents such as Plaintiff's driver's license, passport, social security card, and two documents showing his name and address to verify his identity. The dispute letters each also included as an exhibit a Federal Trade Commission Identity Theft Report that described the Fraudulent Accounts and an inaccurate address. The July Experian Dispute also informed Experian that the disputed information was not accurately attributable to Plaintiff, was believed to be the product of identity theft, was not related to any transaction by Plaintiff.

41. Despite Plaintiff's submission of the foregoing documents and information, Experian failed to temporarily block the Fraudulent Accounts and address from Plaintiff's credit file. Experian informed Plaintiff of its refusal to block the disputed information in a letter dated July 27, 2020.

42. After Plaintiff's July Experian Dispute, Experian continued to report the disputed Fraudulent Accounts even though, had it performed a reasonable reinvestigation, it could not have verified the accuracy of the disputed information. Experian informed Plaintiff of its conclusion in dispute results dated August 11, 2020.

43. Upon information and belief, Experian published one or more consumer reports containing the Fraudulent Accounts.

*Innovis Disputes*

44. Plaintiff made multiple disputes to Innovis of one or more of the Fraudulent Accounts including those disputes set forth below.

45. In a letter dated April 1, 2020, Plaintiff disputed responsibility for the HSBC Account to Innovis ("April Innovis Dispute").

46. After Plaintiff's dispute, Innovis continued to report the disputed HSBC Account even though, had it performed a reasonable reinvestigation, it could not have verified the accuracy of the disputed information. Innovis informed Plaintiff of its conclusion in dispute results dated May 13, 2020.

47. Moreover, Innovis failed to clearly indicate that the HSBC Account was disputed in a May 27, 2020 credit report following the April Innovis Dispute.

48. In a letter dated July 10, 2020, Plaintiff disputed responsibility for the HSBC Account to Innovis ("July Innovis Dispute").

49. The July Innovis Dispute included Plaintiff's name, address, social security number, phone number, date of birth, and, upon information and belief, supporting documents such as Plaintiff's driver's license, social security card, passport, and two documents showing his name and address to verify his identity. The dispute letter also included as an exhibit a Federal Trade Commission Identity Theft Report that described the inaccurate HSBC Account. The July Innovis Dispute also informed Innovis that the HSBC Account was not

accurately attributable to Plaintiff, was believed to be the product of identity theft, and that the HSBC Account was not related to any transaction by Plaintiff.

50. Despite Plaintiff's submission of the foregoing documents and information, upon information and belief, Innovis failed to temporarily block the HSBC Account from Plaintiff's credit file.

*Damages*

51. At all times pertinent hereto, the conduct of Equifax, Experian, and Innovis as well as their respective agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for the rights of Plaintiff pursuant to the FCRA.

52. As a direct and proximate result of the willful and negligent actions, conduct, and omissions of Equifax, Experian, and Innovis, Plaintiff suffered cognizable actual damages, including but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FCRA BY EQUIFAX, EXPERIAN, AND INNOVIS**
**(CONSUMER REPORTING AGENCIES)**

53. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54. Based on the facts alleged in this Complaint including those alleged upon information and belief, Equifax, Experian, and Innovis, by their respective actions and omissions, each independently violated various provisions of the FCRA including but not necessarily limited to the following violations:

    a. Experian violated 15 U.S.C. § 1681c-2;

    b. Equifax and Experian violated 15 U.S.C. § 1681e(b);

    c. Equifax, Experian, and Innovis each violated 15 U.S.C. § 1681i(a)(1);

    d. Equifax, Experian, and Innovis each violated 15 U.S.C. § 1681i(a)(4); and

    e. Equifax, Experian, and Innovis each violated 15 U.S.C. § 1681i(a)(5);

    f. Equifax and Experian violated 15 U.S.C. § 1681i(c).

55. Due to the separate and independent violations of the FCRA by Equifax, Experian, and Innovis, Plaintiff suffered actual damages, including but not limited to damage to Plaintiff's reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

56. These violations by Equifax, Experian, and Innovis of §§ 1681c-2, 1681e, and 1681i were willful, rendering Equifax, Experian, and Innovis liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

57. In the alternative, these FCRA violations by Equifax, Experian, and Innovis were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o.

2. Such other and further relief as may be necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

/s/ Kathy Cruz
**THE CRUZ LAW FIRM, P.L.C.**
1325 Central Ave
Hot Springs, AR 71901
T: (501) 222-8080
E: kathycruzlaw@gmail.com

/s/ Adam G. Singer
**LAW OFFICE OF ADAM G. SINGER, PLLC**
Adam G. Singer
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
E: asinger@adamsingerlaw.com
*Motion for Admission Pro Hac Vice
Forthcoming
Attorneys for Plaintiff*